J-S78028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| WESTMORELAND REGIONAL HOSPITAL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SUBWAY REAL ESTATE CORP. | |
| Appellant | No. 613 WDA 2016 |

Appeal from the Order March 31, 2016
In the Court of Common Pleas of Westmoreland County
Civil Division at No(s): 1249 OF 2015

BEFORE:  BENDER, P.J.E., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED MARCH 14, 2017**

Subway Real Estate Corp. ("SREC") appeals from the order entered March 31, 2016, in the Westmoreland County Court of Common Pleas, granting Westmoreland Regional Hospital's ("Hospital") motion for judgment on the pleadings with regard to a commercial lease, denying SREC's cross-motion for judgment on the pleadings, and directing SREC and its sublessee vacate the leased premises at issue within 60 days.  On appeal, SREC contends the trial court erred in granting Hospital's motion for judgment on the pleadings, and denying its cross-motion.  For the reasons below, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

The facts underlying this appeal are summarized by the trial court as follows:

> This case involves an Agreement of Lease entered into by the parties, which began on February 1, 2005, and ended on January 31, 2010, for property located at 532 West Pittsburgh Street, Greensburg[,] PA 15601. Said Lease Agreement contained a renewal term for one (1) five (5) year period, which option was exercised by [SREC] and accepted by [Hospital] by way of correspondence dated January 7, 2009 and December 1, 2009. Accordingly, said renewal term commenced on February 1, 2010 and expired on January 31, 2015.
>
> In the December 1, 2009 letter (hereinafter "December [L]etter") which confirmed the agreement for the first renewal period, [Hospital] agreed to amend the initial Lease Agreement to include the option of a Second Renewal Term, beginning February 1, 2015 and ending January 31, 2020, and provided the terms of said second Renewal Term as follows:
>
>> Provided that Lessee is not in default of this Lease, the parties may extend the term of this Lease by mutual written agreement a second time for an additional five (5) year period (the "Second Renewal Term") at the same terms and conditions provided in the original Lease Agreement and this amendment thereto; provided however, that the minimum base rent for the Second Renewal Term (the "Second Renewal Base Rent") shall be determined by fair market value, in an amount not to exceed fifteen percent (15%) over the rental rate in effect at the end of the Renewal Term (January 31, 2015); and provided, further, that if the Second Renewal Base Rent, as calculated herein, would be less than fair market value, Lessor shall not renew the term. Any renewal of this Lease shall be on the terms and conditions negotiated between the parties. The Initial Term and all Renewal Terms are hereinafter collectively referred to as the "Term".

The December Letter further provided for an increase in rent during the third year of the Renewal Term[1] and provided signature lines for [SREC's] representatives to sign and send back the agreement, which was not done. [SREC disputes this fact, and, indeed claims it returned a signed copy of the December Letter.] Subsequently, by letter dated January 17, 2014, [SREC] attempted to exercise its alleged option for a Second Renewal Term; however, [Hospital] responded by letter dated January 31, 2014 that the December Letter was never signed and returned, and as a result, the rent was never raised and said Second Renewal Term was never accepted in writing.

Trial Court Opinion, 3/31/2016, at 1-2 (record citations omitted). Accordingly, Hospital asserts the lease term expired on January 31, 2015.

On May 11, 2015, Hospital filed a complaint seeking judgment for possession of real property and money damages. Thereafter, on April 9, 2015, SREC filed an answer, with new matter and counterclaim, seeking a declaration that SREC properly exercised the second renewal option detailed in the December Letter. Hospital filed a timely reply in which it asserted SREC never countersigned and returned the December Letter.

_____

[1] Specifically, the December Letter provided:

According to our discussion, the rent rate will remain at the current rate for the initial three years of the extended term- February 1, 2010 to January 31, 2013. The rent rate will increase for years four and five of the Renewal Term in accordance with the CPI in effect at the year end prior to the beginning of the fourth and fifth term years. Increases for years four and five will be capped at three percent (3%) per year.

Answer with New Matter and Counterclaim, 4/9/2015, at Exhibit B, December 1, 2009, Letter ("December 2009 Letter").

Thereafter, on January 5, 2016, Hospital filed a motion for judgment on the pleadings, asserting it was entitled to judgment as a matter of law. SREC responded with a cross-motion for judgment on the pleadings filed on February 4, 2016. The trial court heard oral argument on March 23, 2016, and, on March 31, 2016, entered an opinion and order granting Hospital's motion, denying SREC's cross-motion, and directing SREC to vacate the premises. This timely appeal followed.[2]

On appeal, SREC first argues the trial court erred in granting Hospital's motion for judgment on the pleadings because the court improperly relied on disputed facts, and wrongly determined the December Letter did not include a "meeting of the minds" concerning rent for the second renewal period. *See* SREC's Brief at 12-17. Moreover, SREC asserts, at the very least, the

_____

[2] The trial court did not direct SREC to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). However, on May 9, 2016, the trial court entered an order stating the reasons for its March 31, 2016, ruling were set forth in the accompanying opinion.

That same day, SREC filed a motion to stay the enforcement of the March 31, 2016, order pending appeal. On May 13, 2016, Hospital filed a responsive brief opposing the stay, or, in the alternative requesting the court direct SREC to file an appeal bond. That same day, the trial court entered an order granting SREC's request for a stay, and directing that SREC continue to pay rent on the premises in lieu of an appeal bond. *See* Order, 5/13/2016.

- 4 -

December 2009 letter was ambiguous, and should have been interpreted against the drafter, Hospital.[3] *See id.* at 17-21.

When considering an order granting judgment on the pleadings,

[o]ur review … is limited to whether the trial court committed an error of law or whether unresolved questions of material fact remained. Because the question of whether judgment on the pleadings was proper is a question of law, our scope of review is plenary.

*Grimes v. Enter. Leasing Co. of Philadelphia, LLC*, 105 A.3d 1188, 1192–1193 (Pa. 2014) (internal citations omitted). Furthermore,

[o]ur review is confined to the pleadings and relevant documents. We must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts that were specifically admitted. We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*McLafferty v. Council for the Ass'n of Owners of Condo. No. One, Inc.*, 148 A.3d 802, 806–807 (Pa. Super. 2016).

At issue herein is the parties' lease agreement, and the purported amendment to that agreement contained in the December Letter. By way of background, we note:

In Pennsylvania, lease agreements are governed by contract law and general contract law principles. As such,

---

[3] We note SREC listed these arguments as three separate issues in its brief. *See* SREC's Brief at 4. However, for ease of disposition, we will address them together.

> when the language of a lease is clear and unequivocal, its meaning will be determined by its contents alone in ascertaining the intent of the parties.
>
> Inasmuch as a lease must be construed according to general principles of contract law, we are mindful that the primary objective in construing a contract is to effectuate the intentions of the parties.
>
> Nonetheless, "[i]t is firmly settled that the intent of the parties to a written contract is contained in the writing itself." Accordingly, when the words of a contract are clear and unambiguous, we are to determine what the parties intended by looking only at the express language of the agreement.

***Giant Food Stores, LLC v. THF Silver Spring Dev., L.P.***, 959 A.2d 438, 447–448 (Pa. Super. 2008) (internal citations omitted), *appeal denied*, 972 A.2d 522 (Pa. 2009).

The trial court provided the following rationale for its ruling granting Hospital's motion for judgment on the pleadings:

> The Court finds that the December Letter is not ambiguous and must be interpreted on its face. Said Letter provides that the parties "*may* extend the term of the Lease by mutual written agreement." Said language could not have created an option in favor of [SREC] without a document confirming the alteration to the Lease signed by both parties, as the language clearly states the intent that a mutual written agreement be required for the possible renewal. Additionally, there was no meeting of the minds with regard to rent, a material term of any lease agreement. The December Letter further stated, "Any renewal of this Lease shall be on the terms and conditions negotiated between the parties." However, the December letter was never signed or accepted so it could not have taken effect, as evidenced by the fact that the rent was never raised or renegotiated by [Hospital] as per the terms of the letter. Accordingly, because the Court cannot find that there was a meeting of the minds with regard to a Second Renewal Term based upon the pleadings, it must grant judgment in favor of [Hospital].

Trial Court Opinion, 3/31/2016, at 4.

SREC first claims the trial court erred in finding SREC "never signed or accepted" the December Letter because "both parties agreed in their respective motions for judgment on the pleadings that the question of whether the December Letter was countersigned and returned was in dispute." SREC's Brief at 13 (emphasis omitted). We agree.

While Hospital averred in its answer and new matter to SREC's counterclaim that SREC did not return a signed copy of the December Letter,[4] it acknowledges in its appellate brief that "the issue of whether the December Letter was counter-signed and returned is **admittedly in dispute**." Hospital's Brief at 9 (emphasis supplied). Indeed, SREC attached a signed copy of the December Letter to its counterclaim. *See* Answer with New Matter and Counterclaim, 4/9/2015, at Exhibit B, December Letter. As noted *supra*, a trial court should not grant judgment on the pleadings when "unresolved questions of material fact remain[.]" *Grimes*, *supra*, 105 A.3d at 1192. Accordingly, we find the court erred to the extent that it relied upon a disputed fact in ruling for Hospital.

Nevertheless, it is well-established that "[t]his Court may affirm an order of the trial court on any basis." *Conestoga Bank v. Tioga Investments II*, 138 A.3d 652, 659 n.7 (Pa. Super. 2016), *appeal denied*,

---

[4] *See* Reply to New Matter and Answer and New Matter of Counterclaim, 5/29/2015, at ¶ 38.

___ A.3d ___, 2016 WL 4921763 (Pa. Sept. 15, 2016). Here, we find the question of whether or not SREC signed and returned the December 2009 letter was not material to the trial court's ruling. Indeed, even assuming SREC did timely sign and return the letter, under the terms of the agreement, SREC could not **unilaterally** invoke the second renewal option. Rather, the December Letter clearly states: "**the parties** may extend the term of this Lease by **mutual written agreement**." December Letter, at 1 (emphasis supplied). "[W]hen the words of a contract are clear and unambiguous, we are to determine what the parties intended by looking only at the express language of the agreement." *Giant Food Stores, LLC*, *supra*, 959 A.2d at 448.

SREC's remaining arguments do not alter our interpretation of the plain language in the December Letter. First, SREC claims the trial court "erred by holding that the parties did not reach a meeting of the minds regarding the rent amount during the Second Renewal Term." SREC's Brief at 14. It emphasizes the second renewal option included a rental calculation, based upon fair market value, and limited any increase to 15 percent. *See id.* at 15. Further, SREC points out the option "included built in protection" for Hospital if the 15 percent limit was significantly less than fair market value. *Id.* at 16. Nonetheless, while we agree the parties came to a basic understanding of the financial terms for a second renewal period, and as the trial court noted, the December Letter also provided that "[a]ny renewal of this Lease shall be on the terms and conditions negotiated

between the parties." December Letter, at 2. This language tracks the earlier, unambiguous provision that the option had to be invoked by **both parties** in a "mutual written agreement." *Id.* at 1. Accordingly, read together, these provisions establish the parties contemplated and required further discussions before mutually agreeing to a second renewal period.

Second, SREC's contention that the December Letter is ambiguous, and should be construed against Hospital is also of no moment. SREC focuses on the Hospital's uses of both mandatory (shall) and permissive (may) language. *See* SREC's Brief at 18. However, that claim only supports the trial court's ruling. While the mandatory language implies the parties agreed upon a rental ceiling, the permissive language ("the parties **may** extend the term of this Lease") demonstrates the second rental term was not a foregone conclusion. We do not agree this language makes the lease ambiguous.

Moreover, the language of the December Letter does not support SREC's claim that "SREC held an option to renew the Lease, so long as SREC was not in default and the rent calculation did not result in rent below fair market value." SREC's Brief at 20-21. While we recognize the December Letter refers to the paragraph at issue as an "option," the language therein clearly provides the second renewal term must be agreed upon by both parties in a written agreement, and the renewal "shall be on the terms and conditions negotiated between the parties." December Letter, at 2.

Therefore, again, the language indicates the parties contemplated a future "mutual" agreement before extending the lease for a second renewal term.

In its remaining claim, SREC argues the trial court erred in denying its cross-motion for judgment on the pleadings because "the parties **orally agreed** to modify the Lease to provide SREC the option of a Second Renewal Term and SREC properly exercised that option."  SREC's Brief at 21 (emphasis supplied).  Relying on a decision of a federal district court, **AFCO Cargo PIT LLC v. DHL Express (USA), Inc.**, 2010 WL 5140622 (W.D. Pa. 2010), SREC claims the parties orally agreed to modify the lease, and the December Letter was simply a "written confirmation of the oral agreement." SREC's Brief at 23.  Again, we disagree.

Preliminarily, we note **AFCO** is both non-binding, and factually distinguishable from the case *sub judice*.  We remind SREC that "pronouncements of the lower federal courts have only persuasive, not binding, effect on the courts of this Commonwealth[.]"  **In re Stevenson**, 40 A.3d 1212, 1221 (Pa. 2012).  **See also Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Family Mkt., Inc.**, 98 A.3d 645, 657, n.11 (Pa. Super. 2014) (noting unpublished decision of United States District Court for the Eastern District of Pennsylvania, cited by appellant "has no precedential value in this matter."), *appeal denied*, 117 A.3d 1281 (Pa. 2015).

Moreover, any potential persuasive authority of the decision is negated by its significant factual differences.  In **AFCO**, the landlord and tenant were

parties to a five-year lease agreement that specifically granted the tenant the right to renew the lease for an additional five-year term. The renewal option stated it was "personal to Tenant and shall not be applicable to any assignee, subtenant or successor of Tenant." **AFCO.**, **supra**, 2010 WL 5140622Id. at *1. Further, the agreement stated the option had to be invoked by the tenant "by the giving of a written notice." **Id.** (citation omitted).

The tenant subsequently subleased the property to the sublessee, who notified the landlord by email that it intended to renew the lease. The landlord acknowledged the written notice requirement, but informed the sublessee "[a] formal notice by e-mail would serve this office to confirm your renewal of the Lease as per the terms of the agreement." **Id.** (citation omitted). Thereafter, the sublessee sent an email specifically invoking the renewal option and paid rent retroactive to the expiration of the initial lease term. However, two years into the new five-year renewal period, the sublessee informed the landlord that it was terminating the lease effective immediately. **See id.** at *2.

The landlord subsequently filed a civil action seeking rent due under the renewed lease. The sublessee argued that, under the terms of the lease, it had no right to renew the lease as a sublessee. **See id.** Further, it also claimed it did not provide written notice of renewal six months prior to the end of the lease term, again as required by the lease. **See id.** In denying the sublessee's motion for judgment on the pleadings, the district

- 11 -

court recognized that a written contract "may be modified by subsequent words or conduct," and in the case before it, there were unresolved issues of material fact, namely whether the parties modified the written terms of the lease by their subsequent conduct. *Id.* at *4. The court emphasized it would be "inequitable" to allow the sublessee to argue it was "incapable of renewing the Lease" when it requested the renewal, and paid rent under the favorable renewal terms for two years. *Id.* Moreover, the court also found it would be "inequitable to allow [the sublessee] to assert now that its e-mail was ineffective to renew the Lease" when the landlord informed the sublessee that its email would satisfy the written notice requirement. *Id.*

Here, however, SREC does not point to any conversations or conduct **subsequent** to the December Letter that would have altered the terms of that written agreement. Rather, SREC emphasizes the December Letter was written to "confirm" the parties' earlier telephone conversation. SREC's Brief at 23. Accordingly, the terms of the renewal option provided for in the December Letter were those agreed upon by the parties. Had SREC believed the renewal option was within its sole discretion, it could have requested an amendment to the December Letter reflecting that language.[5] Accordingly,

_____

[5] We note, too, that the parties' conduct in invoking the first renewal option supports our interpretation of the agreement. SREC sent a letter to Hospital on January 7, 2009, advising Hospital that it was exercising its option to renew the lease. *See* Complaint, 3/11/2015, Exhibit B. The December Letter that followed states, in relevant part: "[Hospital] **accepts your**
*(Footnote Continued Next Page)*

we find the trial court did not err in denying SREC's cross-motion for judgment on the pleading.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/14/2017

_(Footnote Continued)_

**option** to renew the lease for an extended term beginning February 1, 2010 and ending January 31, 2015." December Letter, at 1 (emphasis supplied).