J-S36031-18

2018 PA Super 244

| | | |
|---|---|---|
| AMERICAN EXPRESS BANK, FSB | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JAMES MARTIN AND AMAZING | : | |
| MASONRY, LLC | : | |
| | : | |
| APPEAL OF: JAMES MARTIN | : | No. 181 EDA 2018 |

Appeal from the Order November 28, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 00472 June Term, 2017

BEFORE: GANTMAN, P.J., DUBOW, J., and KUNSELMAN, J.

OPINION BY GANTMAN, P.J.:                    **FILED SEPTEMBER 05, 2018**

Appellant, James Martin,[1] purports to appeal from the order that sustained the preliminary objections of Appellee, American Express Bank FSB ("Bank"), to Appellant's answer, new matter and counterclaim and dismissed Appellant's pleadings with prejudice. We affirm in part and dismiss the appeal in part as moot.

The trial court sets forth the relevant facts and procedural history of this case as follows:

> On June 7, 2017, [Bank] filed a Complaint against [Appellant] related to unpaid credit card debt. On August 25, 2017, [Appellant] filed an Answer along with New Matter and a Counterclaim to [Bank's] Complaint wherein [Appellant] asserted [Bank] had filed the Complaint against the wrong "James Martin." On November 2, 2017, [Bank] filed Preliminary Objections. On November 28, 2017, the

_____

[1] James Martin and Amazing Masonry, LLC appear in the caption as the defendants in the underlying action. We will refer to them collectively as Appellant in this appeal.

> trial court sustained [Bank's] Preliminary Objections and dismissed [Appellant's] Answer, New Matter, and Counterclaim with prejudice.
>
> On December 1, 2017, [Bank] filed a *Praecipe* to Discontinue the case without prejudice, and the Prothonotary discontinued and disposed of the case on the same date. On December 26, 2017, [Appellant] filed a Notice of Appeal from the trial court's November 28, 2017 order.

(Trial Court Opinion, filed January 18, 2018, at 1). The court did not order a concise statement of errors complained of on appeal, per Pa.R.A.P. 1925(b), and Appellant filed none.

Appellant raises the following issues:

> WHETHER THIS COURT HAS AUTHORITY TO RENDER A DECISION BECAUSE THE MATTER IS NOT MOOT AS A RESULT OF…APPELLEE'S *PRAECIPE* TO DISCONTINUE[?]
>
> WHETHER THE TRIAL COURT OBTAINED PERSONAL JURISDICTION [OVER]…APPELLANT AFTER…APPELLEE SERVED HIM WITH COURT PROCESS[?]
>
> WHETHER…APPELLANT IS A DEFENDANT WHO MAY FILE A COUNTERCLAIM UNDER CONSUMER PROTECTION LAWS[?]
>
> WHETHER…APPELLANT'S COUNTERCLAIM, ASSERTING VIOLATION OF THE CONSUMER PROTECTION LAWS, SUFFCIENTLY PLEADS DAMAGES[?]
>
> WHETHER IT WAS ABUSE OF DISCRETION FOR THE TRIAL COURT TO DISMISS THE PLEADING WITH PREJUDICE AND WITHOUT LEAVE TO AMEND[?]

(Appellant's Brief at 3-4).

Appellant initially argues his appeal falls within two exceptions to the mootness doctrine: (1) Appellant suffered a "detriment" due to the trial court's dismissal of his counterclaim with prejudice, where the settlement of his claim

was likely; and (2) the order sustaining the preliminary objections to Appellant's counterclaim will evade appellate review by virtue of the Bank's *praecipe* to discontinue, which makes the trial court the final authority on the counterclaim that Appellant is helpless to avoid. Appellant otherwise contends the order sustaining the preliminary objections to his counterclaim is subject to appellate review and a decision in his favor would allow his counterclaim to proceed and not simply be advisory. We concur to some degree.

As a general rule, if a plaintiff discontinues its action against all defendants before an appeal is filed, then the case is rendered moot, because there is no actual case or controversy pending before the trial court or before this Court. **Motley Crew LLC v. Bonner Chevrolet Co., Inc.**, 93 A.3d 474 (Pa.Super. 2014), *appeal denied*, 628 Pa. 641, 104 A.3d 526 (2014) (rejecting claim that discontinuance renders order "final" for purposes of appeal). "The general effect of a discontinuance is to terminate the action without an adjudication of the merits and to place **the plaintiff** in the same position as if the action had never been instituted." **Id.** at 476 (emphasis added). Absent a pending action or controversy, the court has no matter over which to exercise jurisdiction; the discontinuance "operates to nullify an action." **Id.** A discontinuance of an action under these circumstances is **not** equivalent to the entry of a final order from which an appeal can be taken. **Id. See also Generation Mortgage Company v. Nguyen**, 138 A.3d 646 (Pa.Super. 2016) (holding voluntary discontinuance of action renders defenses to action moot). **Compare Estate of Paterno v. National Collegiate Athletic**

- 3 -

*Association (NCAA)*, 168 A.3d 187 (Pa.Super. 2017) (holding **once appeal is filed**, however, trial court has no authority to accept or grant discontinuance of action until all appeals pending in this Court have also been discontinued) (emphasis added).  Likewise, an issue before a court is moot if the court is unable to enter an order that has any legal force or effect. *Deutsche Bank Nat. Co. v. Butler*, 868 A.2d 574, 577 (Pa.Super. 2005).

Nevertheless, the dismissal of Appellant's counterclaim falls under Rule 232 of the Pennsylvania Rules of Civil Procedure, which provides:

> **Rule 232.  Counterclaim.  Termination of Plaintiff's Action**
>
> (a)    A discontinuance or nonsuit shall not affect the right of the defendant to proceed with a counterclaim theretofore filed.
>
> (b)    A counterclaim may not be terminated, in whole or in part, by the defendant, except by discontinuance or voluntary nonsuit, and subject to conditions similar to those applicable to the plaintiff.

Pa.R.C.P. 232.  An order sustaining preliminary objections and dismissing a defendant's counterclaim becomes a final appealable order when the entry of plaintiff's discontinuance before an appeal is filed disposes of all other claims and parties.  *See generally* Pa.R.A.P. 341.

Instantly, the trial court sustained Bank's preliminary objections to Appellant's answer with new matter and counterclaim on November 28, 2017.  Bank filed its *praecipe* to discontinue its contract action against all parties on December 1, 2017, and the Prothonotary discontinued and disposed of Bank's

case that same day. Appellant timely filed a notice of appeal on December 26, 2017, purporting to challenge the trial court's November 28, 2017 order sustaining Bank's preliminary objections to Appellant's pleadings. Bank's pre-appeal discontinuance of its complaint rendered moot Appellant's answer and defenses/new matter. **See Motley Crew LLC, supra**; **Nguyen, supra**; **Butler, supra**. Therefore, any appellate ruling on the merits of the trial court's decision regarding Bank's preliminary objections to Appellant's answer and new matter would have no force or effect because Bank chose to discontinue its action against Appellant. The effect of Bank's voluntary discontinuance rendered Appellant's defenses to the action moot and placed Bank in the same position as if the action had not ever been instituted. **See id.** Accordingly, we dismiss as moot Appellant's appeal to the extent he tries to challenge the order sustaining Bank's preliminary objections to his answer and new matter to Bank's complaint, which Bank discontinued before Appellant's appeal. **Id.**

With respect to the dismissal of Appellant's counterclaim, however, Rule 232 makes clear Bank's discontinuance of its action against Appellant did not affect Appellant's right to proceed with an appeal concerning the dismissal of his counterclaim. **See** Pa.R.C.P. 232. When Bank filed its discontinuance, it effectively disposed of all other claims and parties and ended the case, so Appellant could appeal the order dismissing his counterclaim, which became final for purposes of review. **See generally** Pa.R.A.P. 341. Therefore, the

appeal from the order dismissing Appellant's counterclaim is properly before us for review.

In his remaining issues, Appellant argues Bank sued the wrong party so he was not the "proper" or "true" defendant. Appellant asserts as long as he was not the proper defendant in Bank's suit against a debtor, the court had no personal jurisdiction over him and no authority to act on Bank's preliminary objections to Appellant's pleadings.[2] Appellant further complains he properly asserted in his counterclaim all of the elements for a cause of action under the Pennsylvania Unfair Trade Practice and Consumer Protection Law ("UTPCPL")[3], which allows for an award of counsel fees incurred as a result of defending

---

[2] We reject outright Appellant's convoluted "personal jurisdiction" argument, because the general rule states: "The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative: (1) Individuals.—(i) Presence in this Commonwealth at the time when process is served. (ii) Domicile in this Commonwealth at the time when process is served. (iii) Consent, to the extent authorized by the consent." 42 Pa.C.S.A. § 5301(a)(1). Appellant admitted he resides and domiciles in Pennsylvania, he did not challenge personal jurisdiction in appropriate pleadings, and he invoked the court's jurisdiction by acting on the merits of the case. *See* Pa.R.C.P. 1028 and 1032; *Hoeke v. Mercy Hospital of Pittsburgh*, 386 A.2d 71, 74 (Pa.Super. 1978). *See also Schmitt v. Seaspray-Sharkline, Inc.*, 531 A.2d 801, 803 (Pa.Super. 1987) (stating law requires more than mere objection to personal jurisdiction). Under these circumstances, the court had personal jurisdiction over Appellant by virtue of his active participation on the merits of the case, even if the Bank sued the wrong person.

[3] *See* 73 P.S. § 201-1 *et seq*.

Bank's claim. Appellant contends his attorney fees to defend Bank's complaint also qualify as the damages element of his counterclaim, he did not have to assert a breakdown of the fees at the pleading stage, and his failure to do so did not cause his counterclaim to preclude recovery with certainty. Appellant concludes this Court must reverse the trial court's decision to dismiss his counterclaim. We disagree.

The relevant scope and standard of review in examining a challenge to an order sustaining preliminary objections in the nature of a demurrer are as follows:

> Our review of a trial court's [order] sustaining…preliminary objections in the nature of a demurrer is plenary. Such preliminary objections should be sustained only if, assuming the averments of the complaint to be true, the plaintiff has failed to assert a legally cognizable cause of action. We will reverse a trial court's decision to sustain preliminary objections only if the trial court has committed an error of law or an abuse of discretion.
>
> All material facts set forth in the complaint as well as all inferences reasonably [deducible] therefrom are admitted as true for the purpose of this review. The question presented by the demurrer is whether, on the **facts** averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

Regarding a demurrer, this Court has held:

> A demurrer is an assertion that a complaint does not set forth a cause of action or a claim on which relief can be granted. A demurrer by a defendant admits all relevant facts sufficiently pleaded in the complaint and all inferences fairly deducible therefrom, but not

> conclusions of law or unjustified inferences. In ruling on a demurrer, the court may consider only such matters as arise out of the complaint itself; it cannot supply a fact missing in the complaint.
>
> Where the complaint fails to set forth a valid cause of action, a preliminary objection in the nature of a demurrer is properly sustained.

*Lerner v. Lerner*, 954 A.2d 1229, 1234-35 (Pa.Super. 2008) (emphasis in original) (internal citations omitted). When analyzing a demurrer, the court "need not consider the pleader's conclusions of law, unwarranted inferences from facts, opinions, or argumentative allegations." *Wiernik v. PHH U.S. Mortg. Corp.*, 736 A.2d 616, 619 (Pa.Super. 1999), *appeal denied*, 561 Pa. 700, 751 A.2d 193 (2000). To determine if the trial court properly sustained preliminary objections, this Court examines the averments in the complaint and the documents attached to the complaint to evaluate the adequacy of the facts averred and to assess the legal sufficiency of the complaint. *Clemleddy Const., Inc. v. Yorston*, 810 A.2d 693, 696 (Pa.Super. 2002), *appeal denied*, 573 Pa. 682, 823 A.2d 143 (2003). "We will reverse a trial court's decision to sustain preliminary objections only if the trial court has committed an error of law or an abuse of discretion." *Soto v. Nabisco, Inc.*, 32 A.3d 787, 790 (Pa.Super. 2011). "Where the complaint fails to set forth a valid cause of action, a preliminary objection in the nature of a *demurrer* is properly sustained." *Id.*

Rule 1028 of the Pennsylvania Rules of Civil Procedure provides, in relevant part:

**Rule 1028.  Preliminary Objections**

(a)  Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:

(1)  **lack of jurisdiction over** the subject matter of the action or **the person of the defendant**, improper venue or improper form or service of a writ of summons or a complaint;

\*     \*     \*

(2)  failure of a pleading to conform to law or rule of court or inclusion of scandalous or impertinent matter;

(3)  insufficient specificity in a pleading;

(4)  **legal insufficiency of a pleading (demurrer)**;

\*     \*     \*

Pa.R.C.P. 1028(a)(2)-(4) (emphasis added).  A trial court may also sustain preliminary objections in the nature of a *demurrer* if it "appears from the face of the complaint that recovery upon the facts alleged is not permitted as a matter of law."  **Kelly v. Kelly**, 887 A.2d 788, 790-91 (Pa.Super. 2005), *appeal denied*, 588 Pa. 770, 905 A.2d 500 (2006).

To promote judicial economy and prompt resolution of claims, Pa.R.C.P. 1031(a) in relevant part provides:

**Rule 1031.  Counterclaim**

a) The defendant may set forth in the answer under the heading "Counterclaim" any cause of action cognizable in a civil action which the defendant has against the plaintiff at the time of filing the answer.

\*     \*     \*

Pa.R.C.P. 1031(a). "The UTPCPL is Pennsylvania's consumer protection law and seeks to prevent '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce….' The purpose of the UTPCPL is to protect the public from unfair or deceptive business practices. Our Supreme Court has stated courts should liberally construe the UTPCPL in order to effect the legislative goal of consumer protection." *DeArmitt v. New York Life Ins. Co.*, 73 A.3d 578, 591 (Pa.Super. 2013).

> The UTPCPL provides a private right of action for anyone who "suffers any ascertainable loss of money or property" as a result of an unlawful method, act or practice." Upon a finding of liability, the court has the discretion to award "up to three times the actual damages sustained" and provide any additional relief the court deems proper. Section 201–2(4) lists twenty enumerated practices which constitute actionable "unfair methods of competition" or "unfair or deceptive acts or practices." The UTPCPL also contains a catchall provision at 73 P.S. § 201–2(4)(xxi). The pre–1996 catchall provision prohibited "fraudulent conduct" that created a likelihood of confusion or misunderstanding. In 1996, the General Assembly amended the UTPCPL and revised Section 201–2(4)(xxi) to add "deceptive conduct" as a prohibited practice. The current catchall provision proscribes "fraudulent **or deceptive conduct** which creates a likelihood of confusion or of misunderstanding."

*Id.* at 591-92 (quoting *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 151-52 (Pa.Super. 2012) (internal citations omitted)). *See also Agliori v. Metropolitan Life Ins. Co.*, 879 A.2d 315, 318 (Pa.Super. 2005) (stating purpose of UTPCPL is to protect consumer public and eradicate unfair or deceptive business practices; foundation of UTPCPL is fraud prevention, and its policy is to place consumer and seller of

- 10 -

goods and services on more equal terms; courts should construe its provisions liberally to serve remedial goals of statute). Nevertheless, to establish a claim under the UTPCPL, a plaintiff must still plead and "prove justifiable reliance and causation, because the legislature never intended [the] statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation." *DeArmitt, supra* at 592.

Significantly, with respect to the "ascertainable loss" element of a valid UTPCPL claim, our Supreme Court held: "[T]he mere acquisition of counsel would not suffice to satisfy the 'ascertainable loss' requirement." *Grimes v. Enterprise Leasing Co. of Philadelphia, LLC*, 629 Pa. 457, 465, 105 A.3d 1188, 1193 (2014). The Supreme Court explained:

> Here, the operative statute initially provides for damages relative to "ascertainable loss[es]," then separately provides for awards of "costs and reasonable attorney fees." 73 P.S. § 201–9.2(a). This express authorization of attorney fees awards is "in addition to other relief provided in this section," which "other relief" encompasses the damages made available as compensation for ascertainable losses. The fees are derivative and consequential. Section 9.2(a)'s plain language makes it readily apparent that the General Assembly deemed ascertainable losses and attorneys' fees to be distinct items for redress. [The] construction of the "ascertainable loss" element as including attorney fees is unreasonable, and contradicted by the plain language of the statute. Moreover, [that] reading would allow a plaintiff to manufacture the "ascertainable loss" required to bring a private UTPCPL claim simply by obtaining counsel to bring a private UTPCPL claim; we presume that such an unreasonable result was not intended by the General Assembly. Because [that] argument is not premised upon a reasonable interpretation of the statutory language, neither [a] resort to the asserted purpose for which the Act allows costs and attorneys' fees, nor the Superior Court's

- 11 -

> reliance on the "deterrence value" of the UTPCPL, is persuasive. In either case, we would still be left with the untenable result that a plaintiff could incur an "ascertainable loss" simply by hiring counsel.

*Id.* at 466, 105 A.3d at 1193-94. "The UTPCPL's private right of action is not a general-purpose enforcement provision." *Id.* "Only those who can meet the requirements of the UTPCPL's private cause of action may bring a personal action," and the mere acquisition of counsel, absent more, does not meet the "ascertainable loss" element of the UTPCPL. *Id.* The Court noted: "[T]here is some force in the observations of other jurisdictions addressing similar provisions in state consumer protection statutes, that if attorneys' fees were to be considered in the calculation of 'ascertainable loss,' [then] the explicit provision for the award of attorneys' fees would be superfluous." *Id.* at 467, 105 A.3d at 1194 (citing cases).

Instantly, Appellant answered Bank's complaint with new matter and a counterclaim for relief under the UTPCPL. Appellant's counterclaim incorporated his answer and new matter. In his answer, Appellant denied he was jointly and individually liable for the account balance claimed due; Appellant denied that Bank had issued an account for credit services to Appellant, and he denied accepting the terms of a credit member agreement or using the credit or failing to pay a balance due or owe any balance. (**See** Appellant's Answer to Bank's Complaint, filed 8/25/17, at ¶¶ 2 through 6.) Appellant's new matter and counterclaim state as follows:

## <u>NEW MATTER</u>

7.   Defendant Martin reasserts paragraphs 1-6 as if fully set forth herein.

8.   Defendant Martin does not have, nor has ever had, a credit card with American Express, and is not familiar with the business and now co-defendant, Amazing Masonry, LLC.

9.   Defendant Martin received no account statements from Plaintiff.  The statement attached as an exhibit to Plaintiff's complaint was sent to a different James Martin (hereinafter, the "actual debtor") and Amazing Masonry LLC at a residence, 2549 E. Birch St., Philadelphia, PA 19134.

10.  Kimberly Martin, who is unknown to Defendant Martin, owns 2549 E. Birch St., Philadelphia, PA 19134.

11.  A docket search shows:

     a. The actual debtor and RJM Martin Cement Contractors were parties in *Kurzyna v. Edwards, et al.*, Docket No. 991100826, and the actual debtor was personally served at 2549 E. Birch St., Philadelphia, PA 19134; and

     b. Amazing Masonry LLC was a party in *DeFilippis, et al. v. Amazing Masonry LLC*, Docket No. SC-16-01-21-5265, and a "Kim" accepted service twice for Amazing Masonry LLC as its agent at 2549 E. Birch St., Philadelphia, PA 19134.

12.  Defendant Martin has owned and resided at 445 Fern St., Philadelphia, PA 19120 since 1993, and is employed as an accounting manager with a charity agency.

13.  Plaintiff's account file does or should identify the debtor who owns the American Express account and is affiliated with Amazing Masonry, LLC.  Plaintiff had a duty to review identifiers in the file to ensure the correct Defendant was sued.

14.  As a result of Plaintiff's failure to review or properly maintain the file and its misidentification, Defendant Martin has incurred expenses related to defending this action.

WHEREFORE, Defendant James Martin respectfully requests that this Honorable Court enter judgment in his favor and against Plaintiff, and for such other and further relief as the Court shall deem just and proper.

## COUNTERCLAIM
*COUNT I*
*VIOLATION OF PA CONSUMER PROTECTION LAW*

15. Defendant Martin reasserts paragraphs 1-14 as if fully set forth herein.

16. At all times relevant hereto, Plaintiff was engaged in trade or commerce as defined by Section 2(3) of the CPL, 73 P.S. §201-2(3).

17. Pursuant to Section 9.2 of the CPL, Plaintiff's actions violate Section 3 and 2(4) of the CPL, 73 P.S. §§201-3 and 201-2(4), as follows:

(ii) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(v) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have; and

(xxi) engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding.

18. Plaintiff caused a likelihood of confusion and misunderstanding regarding the identity of the actual debtor who was approved for and used credit services.

19. Plaintiff misrepresented that Defendant Martin was approved for credit, entered into an agreement containing terms and conditions of services, used the credit, and defaulted on the agreement when failing to pay the account balance.

20. Plaintiff misrepresented that Defendant Martin owes Plaintiff $27,544.86, and engaged in other fraudulent and/or deceptive conduct in pursuing the collection of that debt.

21. As a result of Plaintiff's violations of the CPL, Defendant Martin has experienced aggravation and incurred expenses related to defending this action, including attorney fees and costs.

WHEREFORE, Defendant Martin, pursuant to the CPL, prays for judgment against Plaintiff in the amount of $10,500.00, representing three times his actual damages, plus attorney fees and costs and such other relief as the Court deems just and proper.

(*Id.* at ¶¶ 7 through 21). Among other grounds, Bank raised preliminary objections, in the nature of a demurrer to Appellant's UTPCPL counterclaim, for legal insufficiency of the purported statutory violations and the ascertainable losses. Consistent with his own pleadings, Appellant is not even a "consumer" of Bank's services. Although Appellant might be a "consumer" in the most generic sense, by his own admissions he is not a UTPCPL "consumer" with respect to Bank because he obtained no goods or services from Bank and is not the consumer-debtor identified in Bank's records or in its complaint. Therefore, under these circumstances, Appellant cannot invoke the UTPCPL remedy. Further, as pled, Appellant's purported UTPCPL claim lacks several other elements, including an averment of his "justifiable reliance" on any representation by Bank that caused Appellant an "ascertainable loss." Instead, Appellant denied he personally owed the debt alleged in Bank's complaint, claimed he was the wrong person sued, and did not assert that

Bank had somehow obtained any payment from him.

Importantly, Appellant's "aggravation" and "incurred expenses related to defending Bank's action, including attorney fees and costs," do not qualify as "ascertainable losses" for purposes of the UTPCPL. ***See Grimes, supra*** (stating in several alternative ways that plaintiff cannot manufacture "ascertainable loss" for purposes of UTPCPL simply by hiring counsel and incurring litigation costs). Thus, the trial court properly sustained Bank's preliminary objections to Appellant's UTPCPL counterclaim, without leave to amend, because recovery under the statute was unavailable to Appellant as a matter of law. ***See Kelly, supra***. ***See also Grimes, supra***; ***Bennett, supra***; ***Lerner, supra***; Pa.R.C.P. 1028(a)(4). Accordingly, we affirm in part and dismiss the appeal in part as moot.

Order affirmed in part; appeal dismissed in part as moot.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/5/18

- 16 -